**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

JANE DOE,

      Plaintiff,                            Civil Action No. _____

    v.

HARVARD UNIVERSITY, HARVARD         **COMPLAINT**
UNIVERSITY BOARD OF OVERSEERS,
THE PRESIDENT AND FELLOWS OF         **JURY TRIAL DEMANDED**
HARVARD COLLEGE, and BRIGID
HARRINGTON, in her individual and
official capacity,

      Defendants

    Plaintiff, Jane Doe, a transgender female and applicant to the Harvard University Graduate School and Harvard University School of Business, brings this action to obtain, among other relief, a declaratory judgement under the Declaratory Judgment Act, 28 U.S.C. §2201, that Harvard University, Harvard University Board of Overseers, the President and Fellows of Harvard College and Brigid Harrington (collectively, "Defendants") have unlawfully discriminated and retaliated against her in violation of Title IX of the Education Amendments of 1972, and relevant state law.

## THE PARTIES

1. Plaintiff, a transgender female, is a natural person, citizen of the United States, and resident of the State of California. During the events described herein, Plaintiff resided in Cambridge, Massachusetts.

2. Defendant Harvard University is a private, liberal arts college located in Cambridge, Massachusetts.

3. Upon information and belief, Defendant Board of Overseers is one of the governing bodies of Harvard University. It is composed of 30 members. Upon information and belief, it influences Harvard's strategic decisions, periodically reviews the quality and direction of the University, and may consent to certain actions taken by the Corporation. See https://www.harvard.edu/about-harvard/harvards-president-leadership.

4. Upon information and belief, the President and Fellows of Harvard College is one of two governing bodies at Harvard. Upon information and belief, it oversees Harvard's academic, financial, and physical resources and acts as the confidential sounding board for the President. The Corporation is also responsible for approving the University's "budgets, major capital projects, endowment spending, tuition charges, and other matters." See https://www.harvard.edu/about-harvard/harvards-president-leadership.

5. Upon information and belief, Brigid Harrington is a resident of the State of Massachusetts and was the Title IX Coordinator at Harvard University at all relevant times herein.

6. Plaintiff and Defendants Harvard, the Board of Overseers, the President and Fellows of Harvard College and Brigid Harrington are sometimes hereinafter collectively referred to as the "Parties."

## JURISDICTION AND VENUE

7. This Court has federal question, diversity and supplemental jurisdiction pursuant to 28 U.S.C. § 1331, § 1332 and under 28 U.S.C. § 1367 because: (i) the federal law claims arise under the constitution and statutes of the United States; (ii) Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest; and (iii) the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the U.S. Constitution.

8. This Court has personal jurisdiction over Defendant Harvard on the grounds that the University is conducting business within the State of Massachusetts.

9. This Court has personal jurisdiction over Defendant Board of Overseers on the grounds that it is conducting business within the State of Massachusetts and is one of the governing bodies of Harvard University.

10. This Court has personal jurisdiction over Defendant President and Fellows of Harvard College on the grounds that it is conducting business within the State of Massachusetts and is one of the governing bodies of Harvard University.

11. This Court has personal jurisdiction over Defendant Harrington on the grounds that she was employed by Harvard University as its Title IX Coordinator at all relevant times herein.

12. Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omission giving rise to the claim occurred in this judicial district.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

13. Plaintiff is a transgender muslim of hispanic origin. Plaintiff knew from a young age she was born in the wrong body. She was often bullied and made fun of, called "tranny", "crossdresser", "drag queen", "gay", "homo", and "faggot".

14. Plaintiff completed a Bachelor of Science at a midwestern university. Plaintiff was actively involved in the student body including as President of the Student Body, LGBT Student Government Representative, and as a volunteer with both the Hispanic Student Association and the Muslim Student Association.

15. Plaintiff is an outspoken advocate for transgender rights. She has also advocated for and supported organizations dedicated to supporting undocumented workers and immigrants.

16. Plaintiff has particularly advocated for transgender children who face bullying.

17. Plaintiff applied to Harvard University Graduate School of Education and the School of Business in 2017. Plaintiff sought to gain further education so that she could fight for others who have been discriminated against and disenfranchised on account of their gender or sexuality.

18. Plaintiff attended several Harvard University admission events during the period August 2017 to November 2017. While attending a LGBT Open House at the Harvard Business School event October 16, 2017 Plaintiff was sexually assaulted by a male admissions officer who forcibly kissed her. Plaintiff was shocked, confused, scared, and overwhelmed by the advance.

She felt vulnerable as an applicant to the university having been so brazenly assaulted by an admission officer at a sanctioned admissions event.

19. Plaintiff subsequently reported the violation, however, Defendants have consistently denied the allegation, despite refusing to investigate the assault.

20. Plaintiff was additionally told by by a Harvard Business School LGBT admission officer that Harvard University had not admitted any transgender students in the last three admissions cycles. Defendants also deny this fact, despite refusing to either investigate or provide any support for their denial.

*Harvard University Title IX Policy*

21. Defendant Harvard University maintains a website outlining it's Title IX Policy (hereinafter "The Policy"). See https://titleix.harvard.edu. The website asserts, "The Harvard University Sexual and Gender-Based Harassment Policy is designed to ensure a safe and non-discriminatory educational and work environment and to meet legal requirements, including: Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex in the University's programs or activities; relevant sections of the Violence Against Women Reauthorization Act; Title VII of the Civil Rights Act of 1964, which prohibits discrimination on the basis of sex in employment; and Massachusetts laws that prohibit discrimination on the basis of sex, sexual orientation, and gender identity." <accessed January 03, 2019>

22. The Policy (revised February 10, 2017) defines "sexual harassment" in part as, "unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, graphic, or physical conduct of a sexual nature, when:

(1) submission to or rejection of such conduct is made either explicitly or implicitly a condition of an individual's employment or academic standing or is used as the basis for employment decisions or for academic evaluation, grades, or advancement (quid pro quo)." See https://titleix.harvard.edu/files/titleix/files/harvard_sexual_harassment_policy_021017_final.pdf <accessed January 03, 2019>.

23. The Policy addresses "quid pro quo" harassment stating, "Quid pro quo sexual harassment can occur whether a person resists and suffers the threatened harm, or the person submits and avoids the threatened harm. Both situations could constitute discrimination on the basis of sex." *Id.*

24. The Policy additionally states, "Retaliation against an individual for raising an allegation of sexual or gender-based harassment, for cooperating in an investigation of such a complaint, or for opposing discriminatory practices is prohibited. Submitting a complaint that is not in good faith or providing false or misleading information in any investigation of complaints is also prohibited." *Id.*

24. The Policy includes a statement as to jurisdiction providing, "This Policy applies to sexual or gender-based harassment that is committed by students, faculty, staff, Harvard appointees, or third parties, whenever the misconduct occurs: 1. On Harvard property; or 2. Off Harvard property, if: a) the conduct was in connection with a University or University-recognized program or activity; or b) the conduct may have the effect of creating a hostile environment for a member of the University community." *Id.*

*Retaliation and Violation of Harvard's Title IX Policy*

25. Within days of reporting the October 2017 assault Plaintiff received correspondence indicating her application had been denied.

26. Plaintiff drafted an email correspondence dated February 18, 2018 addressed to various Harvard University admissions personnel expressing her concern that she would be discriminated against because of her transgender status. Plaintiff expressed her concern that transgender individuals were not properly represented and were discriminated against. She stated the basis of her concerns were the express statements made to her by a Harvard University admissions officer.

27. On February 28, 2018 Plaintiff received a response from Julia B. Deland, Director of Admissions, Harvard Graduate School of Education reminding Plaintiff the University had a non-discrimination policy and assuring her the policy was taken incredibly seriously.

28. On March 02, 2018 Plaintiff received notice her Harvard Grade School of Education application had been denied.

*Plaintiff's June 04, 2018 MCAD Complaint*

29. On June 04, 2018 Plaintiff filed a Complaint with the Massachusetts Commission Against Discrimination alleging discrimination by Harvard University based on gender identity in violation of M.G.L. c. 151C.

30. The complaint outlined the facts and circumstances described above and requested relief for having been discriminated against based on her gender identity.

31. Harvard University responded with a position statement dated August 20, 2018 responding to the complaint and requesting it be dismissed with prejudice for lack of probable cause.

32. Harvard alleged Plaintiff was not a competitive applicant based on her academic record, test scores, work history, and personal statements. However, Harvard's position statement did not substantively address or respond to either the October 2017 assault or the statement by the admissions officer regarding the lack of incoming transgender statements.

33. Harvard additionally provided no response or information as to why those incidents were not investigated other than to blatantly deny they occurred.

34. On November 29, 2018 MCAD issued a, Investigative Disposition finding lack of probable cause in response to Plaintiff's June 04, 2018 complaint.

35. The disposition agreed with Harvard's argument Plaintiff was not a competitive applicant to either program going so far as to repeat Harvard's own statistic that admission to the Harvard Graduate School of Education and Harvard Business School is highly competitive, with each school admitting fewer than 15% of applicants.

36. The disposition statement relied entirely upon Harvard's own arguments and statistics as to Plaintiff's apparently weak applications.

37. The disposition statement totally failed to address the October 16, 2017 sexual assault, Plaintiff's report of the assault, or the high probability and likelihood of retaliation resulting both from Plaintiff's rebuff of the advance and Harvard's total failure to investigate.

38. The disposition statement totally failed to address either how the assault violated Harvard's Title IX Policy or how the University failed Plaintiff by refusing to investigate or even acknowledge the assault had occurred.

39. The disposition statement did address the statement of the Harvard admissions officer as to the failure of Harvard to admit transgender students into its programs. However, the statement excused the statement as apparently irrelevant and relied upon Harvard's own statistics without spending any query or analysis on Harvard's failure to investigate or even acknowledge the statement as having been made.

40. The November 29, 2018 Disposition Statement failed to fully address Plaintiff's allegations and unreasonably credited and sided with Harvard's own version of the facts, despite the blatant failure to address either the October 16, 2017 assault or the statement by the admissions officer as to Harvard not admitting transgender students.

*Transgender Students in Higher Education*

41. Transgender individuals have a gender identity that differs from the sex they were assigned at birth.

42. There is substantial and abundant research examining both the experience of transgender students at colleges and universities as well as proposing various recommendations for college faculty and administrators to ensure the full inclusion and safety of transgender students on campuses.

43. Lesbian, gay, bisexual, transgender, and queer students are increasingly present on college campuses, however, they remain both minorities and targets of discrimination.

44. The U.S. Transgender Survey (USTS), a survey of over 27,000 trans adults, found that 24% of respondents who were out as or perceived as trans in college reported being verbally, physically, or sexually harassed at that time—with 16% of those who experienced harassment having left college because of the harassment (Abbie. E. Goldberg (2018, August 01). Transgender Students in Higher Education. Retrieved November 15, 2018, from https://williamsinstitute.law.ucla.edu/research/trans-in-higher-ed/, p. 2 citing (James, S., Herman, J., Rankin, S., Keisling, M., Mottet, L., & Anaf, M. (2016). The report of the 2015 US Transgender Survey. Washington, DC: National Center for Transgender Equality).

45. The National Transgender Discrimination Survey, which surveyed nearly 6,500 trans respondents, found that individuals attending college, graduate school, professional school, or technical school reported high rates of negative treatment by students, teachers and staff, including harassment and bullying (35%). (Goldberg (2018) p.2 citing Grant, J., Mottet, L., Tanis, J., Harrison, J., Herman, J., & Keisling, M. (2011). Injustice at every turn: A Report of the National Transgender Discrimination Survey. Washington: National Center for Transgender Equality and National Gay and Lesbian Task Force).

46. Both Plaintiff's experiences in the college admission process at Harvard University and Defendant's failed and defensive response to allegations of transgender discrimination are consistent and supported by the above statistics.

**Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.**

47. Plaintiff repeats and realleges each and every allegation so far described as if fully set forth herein.

48. Title IX of the Education Amendments of 1972 provides, in relevant part, that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

49. Title IX of the Education Amendments of 1972 applies to all public and private educational institutions that receive federal funding, which includes Defendant Harvard.

50. Title IX may be violated by a school's failure to prevent or remedy sexual harassment or sexual assault. In either case, the statue is enforceable through an implied private right of action.

51. Plaintiff experienced two express incidents of gender-based discrimination and harassment. Defendants failed to either investigate or act on either incident. Defendants have consistently and repeatedly denied both incidents. Defendants have refused to investigate either incident.

52. Defendants' intentional and knowing refusal to investigate the above-described incidents of gender-based discrimination and harassment constitute further violations of Title IX.

53. Based on the foregoing, Plaintiff was harassed and discriminated and retaliated against by Defendants in clear and knowing violation of Title IX.

54. This unlawful discrimination in violation of Title IX proximately caused Plaintiff to sustain substantial injury, damage, and loss, including, without limitation, emotional distress, psychological damages, loss of educational and career opportunities, reputational damages, economic injuries and other direct and consequential damages.

55. As a result, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**Violation of Massachusetts State Law**

56. Plaintiff repeats and realleges each and every allegation so far described as if fully set forth herein.

57. M.G.L.c.151B is the state's primary civil rights law regarding discrimination in employment, housing, credit and mortgage lending; covers race, color, religious creed, national origin, sex, sexual orientation, genetic information and ancestry.

58. M.G.L.c.151B Sec. 3A is the state's sexual harassment law and provides all employers, employment agencies and labor organizations shall promote a workplace free of sexual harassment.

59. M.G.L.c.151C is the state's law regarding civil rights and education, and prohibits discrimination and retaliation by any educational institution on the basis of race, religion, creed, color, national origin and age.

60. M.G.L.c.272, Section 92A, Section 98 and Section 98A is the state's public accommodations civil rights law, and covers religious sect, creed, class, race, color, denomination, sex, sexual orientation, nationality, deafness, blindness, and any physical or mental disability.

61. Massachusetts Law expressly prohibits both "quid pro quo" harassment and "hostile work environment" harassment.

62. Quid pro quo harassment occurs when an individual with authority or control over the terms and conditions of another offers a benefit or advantage in exchange for sexual favors or gratification.

63. If an individual is denied a benefit or advantage due to her refusal to respond to, or rejection of, requests for sexual favors or gratification, she is subjected to quid pro quo harassment.

64. Therefore, either submission to, or rejection of, unwelcome sexual advances may result in quid pro quo harassment.

65. Once the complainant establishes a prima facie case, the burden of production, as opposed to the burden of proof, shifts to the respondent to articulate a legitimate, non-discriminatory reason for the adverse action taken, supported by credible evidence.

66. If the respondent meets its burden of production, the complainant must prove that the reasons offered by the respondent were not its true reasons, but were a pretext for discrimination.

67. Chapter 151B defines "hostile work environment" harassment as: sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when . . . such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment."

68. In a hostile work environment case, the complainant must prove: she was subjected to conduct of a sexual nature; the conduct of a sexual nature was unwelcome; the conduct of a sexual nature had the purpose or effect of creating an intimidating, hostile, humiliating or sexually offensive work environment; and the conduct unreasonably interfered with

complainant's work performance or altered the terms and conditions of the complainant's employment.

69. Here, Plaintiff was clearly subjected to sexual harassment under Massachusetts Law where she was forcibly kissed and assaulted by a Harvard University admissions officer, rebuffed the assault, complained of the assault, and was subsequently denied admission.

70. The failure of Harvard University to make any effort whatsoever to investigate the assault does not excuse the assault.

71. Additionally, the assertion Plaintiff was not qualified for the program does not excuse Defendant's failure to make even a pretense of investigating the incident.

**PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiff Jane Doe demands judgment against Defendants as follows:

(i) a declaratory judgement under the Declaratory Judgment Act, 28 U.S.C. § 2201, that Harvard University, Harvard University Board of Overseers, the President and Fellows of Harvard College and Brigid Harrington (collectively, "Defendants") have unlawfully discriminated and retaliated against her in violation of Title IX of the Education Amendments of 1972, discrimination in violation of 42 U.S.C. § 1981, and relevant state law;

(ii) A permanent injunction requiring Harvard to conduct all admissions in a manner that does not discriminate against transgender students and individuals,

(iii) Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable legal authority; and

(iv) awarding Jane Doe such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Plaintiff Jane Doe herein demands a trial by jury of all triable issues in the present matter.

*Cynthia E. MacCausland*
Cynthia E. MacCausland, Esq.
470 Washington Street
Norwood, MA 02062
Tel.    617-284-3804
Fax    617-507-5852
E.       cynthia@maccauslandlaw.com
BBO# 676990